UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Bill Norkunas, individually,

    Plaintiff,

vs.                                            Case No. 3:09-cv-934-J-32MCR

Seahorse NB, LLC, a Florida Limited Liability
Company,

    Defendant.
_____/

# **O R D E R**

This case is brought under the Americans with Disabilities Act ("ADA"). Plaintiff, Bill Norkunas, who is disabled,[1] claims that Defendant, Seahorse NB, LLC, which operates the Seahorse Hotel located in Neptune Beach, Florida (the "Seahorse"), is not complying with the ADA. According to the Complaint, Plaintiff "encountered architectural barriers at the subject property that discriminate against him on the basis of his disability and have endangered his safety." (Doc. 1, p. 2, ¶ 5). Plaintiff further alleges that he desires to visit the Seahorse not only to avail himself of the goods and services available at the property, but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination. (Doc. 1, p. 3, ¶ 8). Plaintiff

---

[1] Plaintiff states: "I had polio as a child and in early 1990 was diagnosed with post polio syndrome. ... I must use a wheelchair/scooter to get around. With the use of my walking cane and leg brace, I am able to walk only a few feet at a time and only with considerable difficulty. I do not have full use of my hands. I drop items and have trouble with items that require tight grasping or twisting of the wrist." (Doc. 11-2, p. 1, ¶ 2; Tr. 9:7-25, 10:14-25, 11:1-4).

-1-

seeks injunctive relief (the only available remedy under the ADA) and attorney's fees and costs.[2] (Doc. 1, p. 7, ¶ 16). The issue on Defendant's Motion to Dismiss is whether Mr. Norkunas has standing to bring this claim. On March 17, 2010, the Court held an evidentiary hearing on this issue.

## I.    STANDARD

Attacks on subject matter jurisdiction based on Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms -- facial attacks and factual attacks. This is a factual attack. A factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). When a defendant makes a factual attack, he is challenging the accuracy of the allegations, not their sufficiency. See, e.g., Valentin v. Hospital Bella Vista, 254 F.3d 358, 364 (1st Cir. 2001). In such circumstances, the plaintiff must demonstrate that standing exists by a preponderance of the evidence; thus, a trial court can evaluate a jurisdictional claim even when material issues of fact exist. See Morrison v. Amway Corp., 2003 U.S. App. LEXIS 3912, 2003 WL 74738, at *3 (11th Cir. Mar. 5, 2003); Scarfo v. Ginsberg, 175 F.3d 957, 960-61 (11th Cir. 1999) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)); Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). Additionally, the Court is free to make credibility

---

[2]Defendant brought the instant Motion to Dismiss pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, for lack of subject matter jurisdiction. Essentially, Defendant contends Plaintiff lacks standing to bring this case. See (Doc. 6). Plaintiff has filed his response in opposition to Defendant's Motion. (Doc. 11). Defendant filed a reply. (Doc. 16).

determinations when reaching a decision, so long as the factual attack does not implicate an element of the cause of action. Lawrence, 919 F.2d at 1529 ("[T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

## II. DISCUSSION

Defendant argues: (A) Plaintiff lacks standing because his visit to the Seahorse was as a "tester" whose sole purpose was to initiate litigation and he cannot prove any legitimate, concrete plans to return (Doc. 6, pp. 8-17); and (B) Plaintiff lacks standing to challenge any alleged barriers of which he was unaware at the time of filing the complaint and, with regard to the barriers actually encountered, he only has standing to challenge those that exist with regard to his own disability (Doc. 16, pp. 2-6). The Court will address each of these arguments.

### A. Plaintiff's Standing to Bring this Case

Article III, § 2 of the United States Constitution limits federal jurisdiction to actual cases or controversies. A federal court therefore has an obligation to assure itself at the outset of the litigation that a litigant who seeks an injunction has Article III standing. See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 179-80, 145 L. Ed. 2d 610, 120 S. Ct. 693 (2000). The standing doctrine ensures that the "scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." 528 U.S. at 191.

To satisfy Article III's standing requirements, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of;

and (3) that it is likely that the injury will be redressed by a favorable court ruling. Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Additionally, when a plaintiff seeks injunctive relief, he must demonstrate a "real and immediate threat of future injury by the defendant." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983).

Defendant argues the fact that Plaintiff visited the Seahorse in his capacity as an ADA "tester," in and of itself, requires dismissal because Plaintiff fails to meet the redressability requirement for Article III standing.[3] (Doc. 6, p. 8). Although the Eleventh Circuit has not addressed the issue of tester standing under the ADA,[4] it has recognized the standing of a tester to pursue a lawsuit under the Fair Housing Act of 1968, 42

---

[3] Plaintiff admits he is "a tester for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA ..." (Doc. 1, p. 2, ¶ 5).

[4] The Eleventh Circuit has largely been prevented from considering this question because neither plaintiffs nor defendants tend to appeal from adverse rulings in these cases; most typically opt for out of court settlements. Ass'n for Disabled Americans, Inc. v. Key Largo Bay Beach, LLG, 407 F. Supp. 2d 1321, n. 7 (S.D. Fla. 2005) ("Although consideration of the hundreds of ADA cases that have been filed in this District indicate[s] that almost none of these cases are ever appealed, the Court still hopes that this standing issue may reach the Court of Appeals for a final and ultimate determination."). Moreover, several courts, including some of my colleagues on this Court, have expressed concern that "professional plaintiffs," aided by their lawyers who see the prospect of statutory attorneys' fees, are subverting the intent of the ADA by filing serial ADA suits. See e.g., Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) (noting that "the means for enforcing the ADA (attorneys' fees) have become more important and desirable than the end (accessibility for disabled individuals)"); Rodriguez v. Investco, LLC, 305 F. Supp. 2d 1278 (M.D. Fla. 2004) (dismissing ADA claim upon finding that plaintiff was "merely a professional pawn in an ongoing scheme to bilk attorney's fees from the Defendant."). Indeed, Mr. Norkunas has filed at least eight ADA cases in the Southern District of Florida, in addition to four lawsuits filed in this District. He also sued in the Ninth Circuit. See Norkunas v. Wynn Las Vegas, LLC, 343 Fed. Appx. 269 (9th Cir. 2009). While this is a legitimate concern, this Court believes it must focus only on this lawsuit. Unlike in many previous ADA standing cases, this Court conducted an evidentiary hearing, which included direct and cross examination of the plaintiff, to find the facts which will determine the standing issue.

U.S.C. § 3601, *et seq.*, as well as under 42 U.S.C. § 1982. See Watts v. Boyd Properties, 758 F.2d 1482, 1485 (11th Cir. 1985) (noting that "even if a tester is motivated solely by the desire to challenge the legality of allegedly discriminatory practices, this is a sufficient purpose to confer standing" under 42 U.S.C. § 1982); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (holding that both testers and non-profit organizations have standing to bring claims under 42 U.S.C. §3604(d)). Numerous courts in the Middle District of Florida have applied the Eleventh Circuit's rationale to confer tester standing under the ADA as well. See Lucibello v. McGinley, 2008 U.S. Dist. LEXIS 10433, 2008 WL 398981 (M.D. Fla. Feb. 12, 2008); Access for the Disabled, Inc. v. Square, LLC, 2007 U.S. Dist. LEXIS 99118, __ WL __ (M.D. Fla. Oct. 4, 2007); Dunn v. The Gleason Four, Inc., 2007 U.S. Dist. LEXIS 62140, 2007 WL 2447020 (M.D. Fla. Aug. 23, 2007); Bruni v. Fine Furniture by Gordon's, Inc., 2007 U.S. Dist. LEXIS 120, 2007 WL 28341 (M.D. Fla. Jan. 3, 2007); Disability Advocates & Counseling Group, Inc. v. 4SK, Inc., 2005 U.S. Dist. LEXIS 44389, __ WL __ (M.D. Fla. Apr. 6, 2005).[5] Therefore, in line with this interpretation of tester standing, the Court finds Plaintiff's capacity as a tester, in and of itself, does not warrant dismissal for lack of subject matter jurisdiction.

Defendant further argues that "[i]n addition to dismissal for lack of standing due to the nature of [Plaintiff's] visit as nothing more than justification for filing this suit, he also lacks standing because he cannot prove any legitimate, concrete plans to use the

---

[5]Notably, the Tenth Circuit has extended standing to "testers" in ADA cases as well. See Tandy v. City of Wichita, 380 F.3d 1277, 1285-87 (10th Cir. 2004).

Seahorse lodging facilities in the future." (Doc. 6, p. 12). It is true that when a plaintiff seeks injunctive relief, he must demonstrate a "real and immediate threat of future injury by the defendant." City of Los Angeles, 461 U.S. at 101-02. Past exposure to illegal conduct, without a continuing threat of future harm, is insufficient to show a present case or controversy. Id. However, past exposure to illegal conduct can be "evidence bearing on whether there is a real and immediate threat of repeated injury." O'Shea v. Littleton, 414 U.S. 488, 496, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974).

To assess the threat of future violations of the ADA, courts have generally focused on four factors when deciding the likelihood that a plaintiff will return to the defendant's facility and suffer a repeat injury: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plan to return, and (4) the plaintiff's frequency of travel near defendant." Fox v. Morris Jupiter Assocs., 2007 U.S. Dist. LEXIS 70884, 2007 WL 2819522, at *9 (S.D. Fla. Sept. 21, 2007) (*citing* Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1162-63 (S.D. Cal. 2006)); see also Pickern v. Holiday Quality Foods, Inc., 293 F. 3d 1133, 1138 (9th Cir. 2002) (holding that past visits to a store, actual knowledge of barriers to access at the store, and statements that a plaintiff prefers a particular store is sufficient to establish actual or imminent injury); Steger v. Franco, Inc., 228 F.3d 889, 893-95 (8th Cir. 2000) (holding that a disabled plaintiff may have standing even though he only entered the facility on one occasion); Access Now, Inc. v. S. Fla. Stadium Corp., 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001)

("[Plaintiff's] personal history of attendance and continued residence in the area support his contention that he will likely patronize the stadium in the future.").[6]

Plaintiff resides in South Florida, approximately 325 miles away from Defendant's hotel.[7] However, he owns a second home in North Carolina and travels through Jacksonville when traveling between the homes.[8] Additionally, Plaintiff has expressed his desire to return to the Seahorse if the barriers are removed.[9]

Defendant suggests that there are countless other hotels in the Jacksonville area and many that can be found closer to the interstate highway. (Tr. 43:7-23). This has no bearing on Plaintiff's intent to return to the Seahorse. Because Plaintiff *could* visit another hotel does not overcome his stated desire to have access to this hotel. See Fox, 2007 U.S. Dist. LEXIS 70884, 2007 WL 2819522, at *11.

---

[6]It is unsettled whether the ADA actually requires proof of these factors, which essentially require an ADA Plaintiff to convince the Court that they "legitimately" want to return to the facility, before ADA standing is conferred. The Court assumes here that it does.

[7]Plaintiff resides in Broward County, Florida and the Seahorse is located in Duval County, Florida. (Doc. 1, p. 1, ¶¶ 1-2).

[8]Plaintiff states, "I have residences in South Florida and North Carolina. Jacksonville is approximately halfway between those locations. I stop overnight in a hotel in Jacksonville when I travel between my homes. This occurs at least four times per year. I also stop overnight when I travel to other states." (Doc. 11-2, p. 5, ¶¶ 15, 16). Additionally, Plaintiff states, "I serve on the Board of Directors for the March of Dimes and as such I travel throughout the state of Florida seeking support for their work and shall return to Jacksonville." (Id.). Plaintiff testified that he frequently travels to and through the Jacksonville area and will continue do so in the future. See (Tr. 13:10-18; 17:20-24).

[9]Plaintiff testified that "[e]verytime that I would drive north I would want to stay at the Seahorse, if I could." (Tr. 74:19-20); see also (Doc. 11-2, p. 11, ¶ 42). Additionally, Plaintiff expressed a preference to staying near the beach because he has "always liked the beach" and it has been "therapeutic" for him. (Tr. 18:18-22).

Defendant also argues that Plaintiff's litigation history should cast doubt on the sincerity of his desire to return to the Seahorse. (Doc. 6, pp. 14-16). Even assuming Plaintiff's history of bringing ADA suits is relevant in certain circumstances, here, Plaintiff has demonstrated a history, extending back several years, of visiting the Jacksonville area, making his stated desire to return credible. Additionally, Plaintiff's past visits to the Seahorse bolster his stated desire to return.[10] See Fox, 2007 U.S. Dist. LEXIS 70884, 2007 WL 2819522, at *12.

Defendant's best argument is that Plaintiff's stated desire to return to the Seahorse is not "specific and concrete." Defendant references four cases in support of its position that Plaintiff fails to meet the "specific and concrete" requirement, Access for America, Inc. v. Associated Out-Door Clubs, Inc., Fed. Appx. 818 (11th Cir. 2006), Rasmussen v. Cent. Fla. Council BSA, Inc., 2009 U.S. Dist. LEXIS 4831, 2009 WL 320855 (M.D. Fla. Jan. 22, 2009), Access 4 All v. Oak Spring, Inc., 2005 U.S. Dist. LEXIS 20218, 2005 WL 1212663 (M.D. Fla. May 20, 2005), and Rosenkrantz v. Markopolous, 254 F. Supp. 2d 1250 (M.D. Fla. 2003). (Tr. 5:11-25, 6:1-20).

In Associated Out-Door Clubs, Inc., an unpublished decision, the Eleventh Circuit found "no error in the district court's conclusion that, as [the plaintiff] lacked the requisite concrete and specific intent to return to the [Tampa Greyhound] Track, other than 'someday,'" he lacked standing to seek injunctive relief. 188 Fed. Appx. at 820. The

---

[10]Plaintiff initially visited the Seahorse in November 2008 while staying next door. (Tr. 64:8-22). Then, Plaintiff stayed at the Seahorse on July 28-29, 2009. (Tr. 19:21-23). Plaintiff revisted the Seahorse in both August and September of 2009 (Tr. 38:14-15). In August, Plaintiff visited the hotel bar (Tr. 39:2-5) and in September, Plaintiff attempted to stay the night but the hotel was full so he again went to the hotel bar (Tr. 39:12-16).

instant case is distinguishable as Plaintiff in fact revisited the Seahorse *and* has continuously expressed his intent to return in the future.

Additionally, this case is distinguishable from Rasmussen, which dealt with a visitor to a camp. The court held that the plaintiff lacked standing to sue the camp owners for alleged ADA violations at the camp store because the plaintiff failed to demonstrate that she actually visited the store. 2009 U.S. Dist. LEXIS 4831, 2009 WL 320855 (M.D. Fla. Jan. 22, 2009), at *8. Here, Plaintiff did, in fact, visit the Seahorse on four separate occasions and expressed his intent to return when the property is ADA compliant. See (Tr. 19:21-23, 39:2-5, 39:12-16, 64:8-22).

Both Rosenkrantz and Oak Spring, Inc. address alleged ADA violations within hotels. In Rosenkrantz, the court dismissed the plaintiff's ADA claim for lack of standing because he lived hundreds of miles away from the hotel and traveled to the area "irregular[ly], occasional[ly], and infrequent[ly]." 254 F. Supp. 2d at 1253. Similarly, in Oak Spring, Inc., the court dismissed the plaintiff's ADA claim for lack of standing where the plaintiff lived in Broward County and was suing a hotel in Ocala expressing simply a general intent and desire to travel to the same area in the future. 2005 U.S. Dist. LEXIS 20218, 2005 WL 1212663. Here, by contrast, Plaintiff has sufficiently demonstrated that he regularly travels to and through the Jacksonville area and will continue to do so in the future. See (Doc. 11-2, p. 5, ¶¶ 15, 16; Tr. 13:10-18; 17:20-24).

Defendant is correct that a showing that one "might" return to a property is insufficient under both the Supreme Court's decision in Lujan and the Eleventh Circuit's

decision in Shotz[11] to show an immediate threat of future harm.  Defendant's reading of this requirement, however, would require an ADA plaintiff to take a concrete step before a "specific intent to return" could be demonstrated.  Not all activities are amenable to such a concrete step, and standing should not be denied to a plaintiff seeking relief under the ADA merely because he cannot produce evidence of a specific date and time to return.  This is especially true in a hotel setting, where a traveler might not have a set schedule and may have many reasons for picking one hotel over another.  See Square, LLC, 2007 U.S. Dist. LEXIS 99118, __ WL __ ("It is not necessary that [the plaintiff] have concrete and specific plans to return in order to establish a threat of future injury so long as [the plaintiff] has a nonspeculative intent to do so."); see also Associated Out-Door Clubs, Inc., 188 Fed. Appx. 818, 818-20 (Barkett, J., dissenting) ("Especially in the disability context, a "specific-date/set-plans" standard would produce patently absurd results ... [T]he disabled need not plan their lives in such minute detail and with such vast forethought in order to invoke the ADA's protection.").  Moreover, a plaintiff should not be required to make continuous "futile" future attempts to enter the facility.  Instead, as the First Circuit explained, "the existence of a private right of action ... does not depend upon how many attempts a plaintiff has made to overcome a discriminatory

---

[11]In Shotz v. Cates, the Eleventh Circuit dealt with a facial challenge to the standing of a plaintiff under the ADA.  256 F.3d 1077 (11th Cir. 2001).  The Eleventh Circuit concluded that allegations of past discrimination were not sufficient to confer standing.  See id. at 1082.  The plaintiff in that case had neither alleged that they attempted to return nor that they intended to do so in the future.  See id.  Therefore, the Court found the plaintiff had not established that the likelihood of discrimination was "real and immediate."  Id.  Here, by contrast, there is actual evidence (as opposed to allegation) that Plaintiff attempted to returned to the Seahorse *and* that he intends to do so again in the future.

-10-

barrier, but, rather, upon *whether the barrier remains in place.*" Dudley v. Hannaford Bros. Co., 333 F.3d 299, 305 (1st Cir. 2003) (emphasis added).

Finally, the Court has considered Defendant's contention that Plaintiff's lack of pre-suit notice weighs against the sincerity of his expressed intent to return to the Seahorse. (Tr. 138:6-8). However, the Eleventh Circuit has stated that "[a] person may file a suit seeking relief under the ADA without ever notifying the defendant of his intent to do so ... " Association of Disabled Ams. v. Neptune Designs, Inc., 469 F.3d 1357 (11th Cir. 2006). Therefore, this Court will not impose a notice requirement upon Plaintiff nor will it consider this a factor in its determination of whether Plaintiff has standing to bring this case.[12]

Plaintiff has sufficiently established the threat of real and immediate future ADA injury. Accordingly, Plaintiff has standing to sue and proceed with his case.

### B.     Plaintiff's Standing to Challenge to Specific Barriers

Defendant argues Plaintiff lacks standing to challenge any alleged barriers of which he was unaware at the time of filing the complaint and, with regard to the barriers actually encountered, he only has standing to challenge those that exist with regard to his own disability.[13] (Doc. 16, pp. 2-6).

---

[12] Mr. Norkunas testified that he and his lawyer used to provide notice to non-compliant establishments before bringing suit, but to no avail. (Tr 66:9-10).

[13] Additionally, Defendant argues that Plaintiff is only entitled to seek relief with regard to those barriers whose elimination is "readily achievable." (Doc. 16, p. 6). However, although a plaintiff must demonstrate that removal of an architectural barrier is readily achievable to establish a *prima facie* ADA case, Garthright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1273 (11th Cir. 2006), that issue does not bear on whether Plaintiff has standing to challenge specific barriers. Therefore, the Court will not address the argument at this time.

Defendant is correct that Plaintiff does not have standing to challenge alleged barriers of which he was unaware at the time of filing of his complaint. See Brother v. CPL Invest., Inc., 317 F. Supp. 2d 1358, 1368 (S.D. Fla. 2004); see also Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1002-03 (11th Cir. 2004) ("[S]tanding must exist with respect to each claim."). Without actual knowledge of barriers, Plaintiff has not suffered an "injury in fact" which establishes standing at the time of filing the complaint. See Lujan, 504 U.S. 555 at 560-61.[14] Additionally, Plaintiff does not have standing to challenge barriers which are not related to his particular disabilities. Id. at 1368.

Plaintiff's Complaint identifies twenty-one alleged ADA violations at Defendant's facility, broken up into the following five categories: Parking and Loading Zone; Accessible Routes; Public Restrooms; Accessible Guestrooms and Suites; and Access to Goods and Services. (Doc. 1, pp. 3-5, ¶ 10). The Court will first address Plaintiff's challenges to the barriers contained in the "Accessible Guestrooms." The parties dispute whether Plaintiff in fact requested an accessible guest room for his stay on July 28-29, 2009. According to Plaintiff, he requested an accessible guest room. (Tr. 44:15-17). However, according to Michelle Uhlfelder, the desk clerk, Plaintiff did not request

---

[14]Some courts have held that a plaintiff need not encounter all barriers nor have knowledge of all barriers to obtain relief. See, e.g., Steger v. Franco, Inc., 228 F.3d 889, 894 (8th Cir. 2000); Pickern v. Holiday Quality Foods, 293 F.3d 1133, 1138 (9th Cir. 2002). In other words, a plaintiff may have only encountered one barrier, as in Steger, but the injunction would apply to all barriers in existence for people with the plaintiff's particular disability. However, courts in the Eleventh Circuit have been more cautious, requiring a showing of plaintiff's actual knowledge of particular barriers for the plaintiff to have standing to challenge those barriers. See Access Now, Inc. v. S. Fla. Stadium Corp., 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001); Fox v. Morris Jupiter Assocs., 2007 U.S. Dist. LEXIS 70884, 2007 WL 2819522, at *6 (S.D. Fla. Sept. 21, 2007).

an accessible room, and instead stayed in room 108, a non-accessible room. (Tr. 106:23-24, 107:3). She said there was an accessible room available if Plaintiff had asked. (Tr. 107:1).

Certainly, each and every room in the Seahorse is not required to be ADA compliant.[15] Plaintiff must have actually stayed in a room to have standing to complain about any alleged barriers contained therein. See CPL Invest., Inc., 317 F. Supp. 2d 1358 (holding the plaintiffs did not have standing to challenge barriers in hotel rooms they did not actually stay in). The Court accepts Ms. Uhlfelder's testimony that there was an accessible room available on the night Plaintiff stayed at the Seahorse. Since, for whatever reason, Mr. Norkunas did not stay in it, he has no standing to complain that the Seahorse rooms are non-compliant.

With regard to the remaining categories of alleged ADA violations, according to Plaintiff, he personally encountered architectural barriers when parking, entering the lobby, accessing the ice machine, accessing the beach and outdoor facilities, using the public restrooms, and traveling around the grounds. (Tr. 24:7-9, 31:14-25, 32:9-12; 33:6-25; 34:1-15; Doc. 11-2, pp. 6-8, ¶¶ 22-31). Based on these assertions and the actual limitations Plaintiff suffers as a result of his disability, the Court finds Plaintiff has standing to challenge the remaining categories of violations alleged in the complaint, i.e. parking and loading zone, accessible routes, public restrooms, and access to goods and services.

---

[15]The Seahorse is only required to have two accessible rooms. 28 C.F.R. Pt. 36, App. A at 9.12.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 12) is **GRANTED in part and DENIED in part** as provided in the body of this Order. This ruling does not address whether, in fact, the Seahorse is in violation of the ADA or any remedy the Court might order if the Seahorse is found to be non-compliant.

2. Plaintiff's Motion for Partial Summary Judgment (Doc. 20) is **DENIED without prejudice** to renewal. Under the Local Rules, any motion for summary judgment and supporting memorandum filed by any party must be no more than 25 pages and cannot include a separate "Statement of Undisputed Facts."

3. Plaintiff's Motion to Compel (Doc. 19) is **DENIED without prejudice** to refiling after conferral with Defendant to see if the issues can be resolved.

4. The parties shall file an Amended Case Management Report no later than July 15, 2010.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 16th day of June, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

Copies to:
Counsel of Record